## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **EXPERIAN MARKETING SOLUTIONS, INC., a Delaware Corporation, and EXPERIAN INFORMATION SOLUTIONS, an Ohio Corporation,** | ) ) ) ) ) | **CASE NO: 8:09CV24** |
| **Plaintiffs,** | ) | |
| **vs.** | ) ) | **MEMORANDUM AND ORDER** |
| **U.S. DATA CORPORATION, a Nebraska Corporation, and JEFF HERDZINA,** | ) ) ) ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Filing No. 43). For the reasons stated below, the motion will be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the pending motion to dismiss, this Court accepts as true the factual allegations in the Amended Complaint (Filing No. 40) ("Complaint"), although the Court is not bound to accept Plaintiffs' legal conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The following is a summary of those allegations.

Plaintiff Experian Marketing Solutions, Inc. ("Experian Marketing") compiles and analyzes data from public and proprietary sources related to consumer demographics and behavior, and then categorizes the data into a compilation of datasets in a collective database known as "Insource." (Filing No. 40 ¶ 19.) Experian Marketing and its affiliates constantly monitor the data to ensure quality and recency. (*Id.* ¶ 20.) Using variables from the Insource database, Experian Marketing classifies all U.S. households into distinct segments using a system called MOSAIC. (*Id.* ¶ 22.) The MOSAIC system classifies

households and neighborhoods into uniquely named groups that share similar socio-economic and geographic attributes. (*Id*.)  Experian Marketing's affiliate owns the MOSAIC mark, and Experian Marketing claims rights as an exclusive licensee to use and enforce it.  (*Id*. at ¶ 23.)  Experian Marketing disseminates its data through "Experian Authorized Resellers" to authorized users who have paid for its use.  (*Id*. ¶ 29.)  To become an authorized reseller, an entity must adhere to certain royalty and data security requirements to prevent unauthorized use of the data. (*Id*.¶ 30.) Plaintiff Experian Information Solutions, Inc. ("Experian Information") is a consumer credit reporting agency and owns the EXPERIAN trademark.  (*Id*. ¶¶ 7, 25.)

Defendant U.S. Data Corporation ("U.S. Data") maintains a large consumer data file and directly competes with Experian Marketing and its authorized resellers.  (*Id*. ¶¶ 31, 34.) Plaintiffs allege that U.S. Data possesses unauthorized data files that bear the EXPERIAN and MOSAIC marks and were not acquired through Experian Marketing or its authorized resellers. (*Id*. ¶ 33.)  Some of the data files possessed by U.S. Data are stale, outdated and otherwise unauthorized.  (*Id*. ¶ 37.)  Plaintiffs claim that U.S. Data marketed data files to its clients as authorized EXPERIAN data without permission or approval.  (*Id*.¶ 36.) Specifically, Plaintiffs allege that Matt Rosche ("Rosche"), a U.S. Data employee, represented to at least one customer through a series of email and telephone conversations that U.S. Data could provide EXPERIAN data segmented by the MOSAIC system.  (*Id*. ¶ 44-48.)  Ryan Kobza ("Kobza"), another U.S. Data employee, also told at least one customer that U.S. Data purchased all its data from Experian Marketing and its affiliates and was approved to sell EXPERIAN and MOSAIC data.  (*Id*.¶ 54-55.)  In both

2

instances, U.S. Data provided customers with data files bearing the EXPERIAN and MOSAIC marks. (*Id.* ¶ 52, 56.) Defendant Jeff Herdzina ("Herdzina") owns, operates, and manages U.S. Data's employees and Plaintiffs allege he was aware that U.S. Data wrongfully obtained and disseminated EXPERIAN data with MOSAIC segments. (*Id.* ¶ 42.) Plaintiffs also claim Herdzina knew Experian's strict licensing terms because he signed a valid license agreement with U.S. Data as recently as 2005. (*Id.* ¶ 43.) A U.S. Data employee or agent allegedly told one of its customers that Herdzina personally managed the unauthorized database. (*Id.* ¶ 53.)

Plaintiffs state four causes of action against U.S. Data and Herdzina. First, Plaintiffs contend that U.S. Data's use of the EXPERIAN and MOSAIC marks constituted trademark infringement under 15 U.S.C. § 1114. (*Id.* ¶ 57-59.) Second, Plaintiffs contend that U.S. Data's use of the EXPERIAN and MOSAIC marks constituted unfair competition under 15 U.S.C. § 1125(a). (*Id.* ¶ 60-65.) Third, Plaintiffs contend that U.S. Data's actions constituted infringement and unfair competition under Nebraska common law. (*Id.* ¶ 66-67.) Finally, Plaintiffs assert that the Defendants violated the Nebraska Deceptive Trade Practices Act. (*Id.* ¶ 68-69.) With regard to each cause of action, Plaintiffs seek damages and an injunction to prevent the Defendants from using the EXPERIAN and MOSAIC marks, injuring Plaintiffs' goodwill, and causing confusion as to the source or approval of Plaintiffs' products or services.

The Defendants U.S. Data and Jeff Herdzina moved to dismiss the Complaint asserting that (1) Count I should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because both Plaintiffs lack standing to assert a claim under 15

U.S.C. § 1114; (2) Counts II through IV should be dismissed under Rules 12(b)(1) and 12(b)(6) because Experian Information lacks standing under 15 U.S.C. § 1125(a), the Nebraska Deceptive Trade Practices Act, and Nebraska common law; (3) Count II should be dismissed as to both Plaintiffs under Rule 12(b)(6) because Plaintiffs' claims are inconsistent with the Supreme Court's ruling in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); (4) Count III should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state a claim under Nebraska common law; (5) Count IV should be dismissed under Rule 12(b)(6) because Plaintiffs fail state a claim under the Nebraska Deceptive Trade Practices Act; and (6) Counts III and IV against Jeff Herdzina should be dismissed under Rule 12(b)(6) because Plaintiffs fail to allege the requisite personal conduct.

## STANDARD OF REVIEW

A motion pursuant to Fed. R. Civ. P. 12(b)(1) challenges the actual existence of the Court's subject matter jurisdiction.  The party asserting jurisdiction has the burden of proving that jurisdiction is proper. *VS Ltd. P'ship v. Dep't of Hous. and Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000).  Although a motion to dismiss under Rule 12(b)(1) will not be granted lightly, it is proper when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows that there is no basis for jurisdiction.  *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).  "If a plaintiff lacks standing, the district court has no subject matter jurisdiction."  *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 980 (8th Cir. 2009) (quoting *Young Am. Corp. v. Affiliated Computer Servs. Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) (internal quotations omitted)).

4

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the factual allegations in the Amended Complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

## DISCUSSION

### I.    Motion to Dismiss Count I for Lack of Standing

Defendants move to dismiss Count I based on Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6) because both Plaintiffs lack standing to assert a claim under 15 U.S.C. § 1114. First, Defendants state that Experian Marketing lacks standing under § 1114 because it is not the trademark's registrant, legal representative, predecessor, successor, or assignee. Second, Defendants argue that Experian Information lacks standing under § 1114 because it is not in competition with U.S. Data and therefore has not alleged an injury as required by Article III of the U.S. Constitution. The Court will examine these arguments in turn.

### A.    Experian Marketing's Standing as a "Registrant"

Section 1114 creates a cause of action only for "registrants" of a trademark. The term "registrant" includes the trademark's registrant and its "legal representatives,

5

predecessors, successors and assigns." 15 U.S.C. § 1127.  Licensees typically do not have standing to assert a claim under § 1114.  *See Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 531 (7th Cir. 1998).  However, a truly exclusive licensee may assert a claim under § 1114 where the terms of the license agreement amount to *de facto* assignment of the mark.  *Id.* (quoting *Quabaug Rubber Co. v. Fabian Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977)).  In each case cited by the parties in their briefs, the court determined standing by analyzing the provisions of the licensing agreement.  *See, e.g., ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597-99 (5th Cir. 2003); *Fin. Inv. Co. (Bermuda) Ltd.*, 165 F.3d at 531-32*; Quabaug Rubber Co.*, 567 F.2d at 158-160*; G.H. Mumm Champagne v. E. Wine Corp.*, 142 F.2d 499, 502 (2d Cir. 1944); *Trump Plaza of Palm Beaches Condo. Ass'n v. Rosenthal*, 2009 WL 1812743, at **9-10 (S.D. Fla. June 24, 2009); *Kia Motors Am.*, 2007 WL 4372954, at **2-3; *Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F.Supp. 659, 665-66 N.D. Cal 1995).  To equate to an assignment, the licensor must grant the licensee a property interest in the trademark.  *Kia Motors Am. v. Autoworks Distrib.*, 2007 WL 4372954, at *2 (D. Minn. Dec. 7, 2007).

To rise to the level of a property interest, the license must be truly exclusive in that the licensor retains no rights to use the mark and the licensee can exclude the licensor from use.  *Bliss Clearing Niagara, Inc. v. Midwest brake Bond Co.*, 339 F. Supp.2d 944, 960 (W.D. Mich. 2004); *Fin. Inv. Co. (Bermuda) Ltd.*, 165 F.3d at 532 (quoting 3 Jerome Gilson, *Trademark Protection & Practice* § 8:16[1][b] (1997)); *Quabaug Rubber Co.*, 567 F.2d at 159; *ICEE Distribs., Inc.*, 325 F.3d at 598-99.  A license may also be tantamount to an assignment where the license agreement grants exclusive use of the trademark

6

without restrictions on the licensee's ability to enforce it. *Bliss Clearing Niagara, Inc.*, 339 F.Supp.2d at 960 (quoting *Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F.Supp. 659, 665-66 (N.D. Cal. 1996)).  Courts have found that a licensee has no property interest where (1) the license agreement imposes geographical limitations on the use of the trademark, *Calvin Klein Jeanswear Co., v. Tunnel Trading*, 2001 WL 1456577, at *5 (S.D.N.Y. Nov. 16, 2001); (2) the licensing agreement requires the licensee to maintain the trademark's quality and reserves the right to monitor the licensee's product quality, *Gruen Marketing Corp. v. Benrus Watch Co., Inc.*,  955 F. Supp. 979, 983 (N.D. Ill.,1997); (3) the rights and duties in the license agreement are inconsistent with an assignment,  *Fin. Inv. Co. (Bermuda) Ltd.*, 165 F.3d at 532, and (4) the license agreement states that the licensor retains ownership of the trademark.  *Ultrapure Sys., Inc.*, 921 F.Supp. at 665 (citing *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2d Cir.1980)).

Experian Marketing has not provided a license agreement and the Amended Complaint does not expressly state that the allegations come directly from the licensing agreement.  However, in their brief, the Plaintiffs make reference to Paragraphs 1 and 23 of the Complaint in support of their assertion that Experian Marketing is the interested party with standing in this matter.  (Filing No. 47 at 6-7.)  Paragraph 1 describes Experian Marketing's overall operations and concludes, "In connection with their activities, Experian Marketing, Experian Information and their affiliates have provided products and services under the trademark EXPERIAN® and other distinctive marks."  This statement does not sufficiently allege a property interest on the part of Experian Marketing.  Paragraph 1 merely points out that Experian Marketing and its affiliates have provided services and

7

products under EXPERIAN and other distinctive marks.  Paragraph 23 ambiguously alleges a property interest on behalf of Experian Marketing in the MOSAIC mark. Paragraph 23 reads in pertinent part:

> Experian Marketing's affiliate owns and Experian Marketing has the right as an exclusive licensee to use and enforce the violation of the federally, registered, incontestable trademark <u>MOSAIC®</u>, including the right to initiate litigation against infringement . . . .   Experian Marketing is a licensed user of the <u>MOSAIC®</u> mark in the United States.

(*Id.* ¶ 23.)

Several courts have stated that the exclusive right to use and enforce the trademark is indicative of an assignment.  Viewing the Plaintiffs' allegation as true, and in the light most favorable to the Plaintiffs, this Court may infer that Experian Marketing possesses the only license to use and enforce the MOSAIC mark.  However, paragraph 23 does not expressly state that Experian Marketing possesses those rights exclusive of all others, including the licensor; rather, it states that Experian Marketing possesses those rights as an "exclusive licensee."  As noted above, a bare statement that a licensee is exclusive is insufficient to establish a property interest in a mark.  Paragraph 23 also admits that Experian Marketing's unnamed "affiliate" and not Experian Marketing, owns the mark.  A copy of the Principal Register of the MOSAIC mark, attached to the Complaint as Exhibit A, lists Experian Limited of the United Kingdom as the registrant and owner of the mark.  Courts typically do not grant standing where the license agreement expressly indicates that the licensor retains ownership.  *See Ultrapure Sys., Inc.*, 921 F.Supp. at 665 (citing *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2d Cir.1980)).  It is recognized that any licensor retains *some* ownership interest, and the license agreement alone would dictate whether the right to use and enforce a mark has been transferred from Experian Limited

8

to Experian Marketing. Finally, paragraph 23 of the Complaint states that Experian Marketing is a licensed user of the MOSAIC mark in the United States. This allegation may suggest that Experian Marketing is the exclusive licensed user in the United States or that it is one of many licensed users.

Some allegations in Paragraph 23 support an inference that Experian is an exclusive licensee, while others strongly suggest it is merely a licensed user. Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading with the court's leave, and a court should freely give leave to amend "when justice so requires." *Id.* The Court recognizes that it must accept the allegations of the Complaint as true and make all reasonable inferences in favor of Experian Marketing. However, inferring the existence of an assignment in favor of Experian Marketing would ignore other statements in the Complaint indicating that Experian Marketing's interest in the MOSAIC mark is not exclusive. Such inferences would also require Defendants to begin what may be a lengthy and costly process to discover the license agreement. As noted above, the court in each decision cited by the parties determined standing by examining the terms of the license agreement. Thus, the Court will permit Plaintiffs to file a Second Amended Complaint to clarify Experian Marketing's rights as a licensee and to attach as an exhibit the license agreement needed to determine whether a *de facto* assignment in the MOSAIC mark has been effected.

B.   Experian Information's Article III Standing

Defendants assert that Experian Information lacks standing under § 1114 because Plaintiffs failed to allege a causal connection between the alleged violation and any redressable injury in fact as required by the United States Constitution. Constitutional

9

standing is based on the case-or-controversy requirements of Article III, and has three elements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Am. Ass'n. of Orthodontists v. Yellow Book USA, Inc*., 434 F.3d 1100, 1103 (8th Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendants argue that Experian Information could not have suffered any concrete or particularized injury because it is not in competition with U.S. Data. Specifically, Defendants state the fatal flaw in the claim is that Experian Information is in the credit reporting business and does not provide mailing lists in competition with U.S. Data. The Court disagrees. Experian Information owns the EXPERIAN mark. The EXPERIAN mark is registered for information services such as electronic lists, reports and data, consumer information services in the field of management of information and data of others, market research and analysis, and preparing mailing lists. (Filing No. 40 at ¶¶ 24, 25, Exhibit B.) The Complaint further states that the data files Defendants allegedly sold or marketed were stale, outdated, or otherwise not approved, and that Defendants were not authorized to resell any EXPERIAN data. (*Id*. at ¶¶ 36-39.) Plaintiffs also allege "Defendants' use of the name or mark <u>EXPERIAN</u>® . . . . is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of Defendants' products and services by Plaintiffs" to Plaintiffs' injury. (*Id*. at ¶ 58).

10

These claims, accepted as true, satisfy the elements of standing under Article III. First, U.S. Data's unauthorized use of the data invades Experian Information's property interest in the EXPERIAN service mark.  Further, Plaintiffs allege specific, rather than hypothetical, instances wherein Defendants used and marketed the mark.  Second, Plaintiffs allege that the data marketed and sold by U.S. Data was inferior and unauthorized.  Unauthorized data provided under the EXPERIAN mark could cause public confusion about Experian Information's association with U.S. Data.  Public confusion as to Experian Information's association with the inferior data files provided by U.S. Data could be traceable to U.S. Data's unauthorized use.

Lastly, the facts in the Complaint sufficiently allege that a favorable decision would redress the potential confusion.  Defendants cite *American Ass'n of Orthodontists v. Yellow Book,* 434 F.3d 1100 (8th Cir. 2006) as controlling on the issue of Experian Information's constitutional standing.[1]  In *Yellow Book*, the American Association of Orthodontists ("AAO") sued Yellow Book, a phone book publisher, for trademark infringement under 15 U.S.C. § 1125(a)(1) for publishing a dentist's advertisement in the "Orthodontists" section of its phone book even though the dentist was not licensed by the AAO to practice orthodontics.  434 F.3d at 1101.  The Eighth Circuit ruled that the AAO did not have

---

[1] Defendants also cite *Krasny Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp 2d 455, 464-65 (E.D.N.Y. 2008), because that court analyzed Article III standing under a § 1114 claim rather than § 1125(a)(1).  However, that case is inapplicable to the case at hand.  In *Krasny Oktyabr*, the plaintiff had § 1114 standing only as a "legal representative" of its licensor, thus the plaintiff could only collect for damage to the licensor.  *Id.*; *see also* 15 U.S.C. § 1127 (granting standing under § 1114 to the legal representative of the registrant of a trademark).  The court found no Article III standing because the plaintiff could not show a causal connection between the defendant's wrongdoing and any injury to the licensor.  *Krasny Oktyabr*, 578 F. Supp. 2d at 465.  Here, Experian Information asserts its § 1114 claim as the registrant, thus the reasoning in *Krasny Oktyabr* is inapplicable.

standing to bring a § 1125(a)(1) claim.  *Id.* at 1104.  The Eighth Circuit Court reasoned that even if Yellow Book's listings confused the public about whether AAO approved the listings, enjoining the listing of unlicensed orthodontists in Yellow Book would not redress public confusion of AAO's endorsement.  *Id.* at 1103.  The court further reasoned, under prudential standing considerations, that AAO lacked standing because Yellow Book was not a competitor of AAO or its members.  *Id.* at 1103-4.

*Yellow Book* is distinguishable from this case.  Unlike the AAO in *Yellow Book*, an injunction would likely redress Experian Information's alleged injury.  In *Yellow Book*, confusion over whether the AAO endorsed the listings would not be remedied by an injunction because the public still would have had no way of knowing whether orthodontists listed in Yellow Book were qualified under AAO standards.  *Id.* at 1103. Thus, the injury could not be redressed and AAO failed to meet the third element of Article III standing.  *Id.* In contrast, Experian Information's injury is the perception that it authorizes the sale of stale, outdated, or otherwise unauthorized data.  Even assuming Experian Information's sole service is to provide consumer credit information, and U.S. Data's service is to provide consumer behavior information, both companies are in the business of providing information.  It does not matter that Experian Information and U.S. Data do not directly compete.  *See Mutual of Omaha Ins. Co, v. Novak*, 836 F.2d 397, 399 (8th Cir. 1987) (stating "confusion, not competition is the touchstone of trademark infringement . . . . [i]t is error to assume that trademark law protects against use of a mark only on directly competitive products.")  Thus, inferior information of any kind provided under the EXPERIAN mark could damage Experian Information and cause public confusion.  An injunction

against U.S. Data's use of the data and/or service mark in question with regard to the inferior data would eliminate any confusion as to its source and redress infringement. Therefore, the Court finds that, accepting Plaintiffs' allegations as true, Experian Information has alleged sufficient facts to have Article III standing to sue under § 1114.

C.    Plaintiffs' Right to Enforce Both Marks Jointly

Defendants recognize, and Plaintiffs do not dispute, that Experian Marketing has not alleged an interest in the EXPERIAN mark, nor has Experian Information alleged an interest in the MOSAIC mark.  As noted above, Section 1114 creates a cause of action only for "registrants" of a trademark including its "legal representatives, predecessors, successors and assigns."  *See* 15 U.S.C. § 1127.  Because Experian Information alleged no rights in the MOSAIC mark, it lacks standing to enforce it in an infringement claim under § 1114.  Similarly, because Experian Marketing asserted no rights in the EXPERIAN mark, it has no standing to enforce the MOSAIC mark under § 1114.

II.    **Counts II, III, and IV, and Experian Information's Lack of Constitutional Standing**

Defendants argue that Experian Information also lacks Article III standing to assert Counts II through IV because Experian Information failed to allege the requisite actual or potential injury.  Defendants argue that the elements of each of the causes of action for infringement in this case carry essentially the same elements for the purposes of this Motion.  *See Mutual of Omaha Ins. Co. v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986) (stating that the elements of trademark infringement under 15 U.S.C. §§ 1114, 1125(a), the Nebraska Deceptive Trade Practices Act, and Nebraska common law are the same). The facts supporting Plaintiffs' claims allege infringement of both the MOSAIC and EXPERIAN

13

marks.  Because the Court finds that Experian Information has standing to enforce the

EXPERIAN mark under § 1114, it similarly has standing to enforce the EXPERIAN mark under

§ 1125(a), the Nebraska Deceptive Trade Practices Act, and Nebraska common law.

### III.   Count II: Failure to State a Claim based on *Dastar v. Twentieth Century Fox*

Defendants argue that Plaintiffs failed to state a claim under 15 U.S.C. § 1125(a)

because the intangible lists are neither goods nor services.  Defendants' argument is

based on the United States Supreme Court's decision in *Dastar v. Twentieth Century Fox*

*Film Corp.*, 539 U.S. 23 (2003).  In *Dastar*, the Supreme Court held that trademark law

could not be used to extend the scope of copyright or patent protection.  *Id.* at 34-35.  The

dispute in *Dastar* arose over the television rights to General Dwight D. Eisenhower's World

War II book entitled *Crusade in Europe*.  *Id.* at 25.  Twentieth Century Fox ("Fox") acquired

the copyright to the book and licensed the rights to Time Inc. to make a televison series

based on the book.  *Id.* at 25-26.  Time made the series, but Fox failed to renew the

copyright and the television series fell into the public domain.  *Id.* at 26.  Fox eventually

reacquired the television rights and licensed the reproduction of a new televison series.

*Id.*  However, the original series remained in the public domain.  *Id.*  Dastar Corporation

("Dastar") took the original series, edited it, and re-released it on the 50th anniversary of the

end of World War II.  *Id.* at 27.  Fox sued Dastar for violating the Lanham Act's provision

on misleading representations of origin, and the district court and Ninth Circuit found for

Fox.  *Id.*  The Supreme Court reversed, stating that the Lanham Act did not extend

trademark protection to patents and copyrights.  *Id.* at 34.  In making its decision, the

Supreme Court reasoned that the phrase "origin of goods" in § 1125(a) referred "to the

14

producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37 (citing the definitions in copyright law listed in 17 U.S.C. § 202 as analogous support to explain the difference between copyrighted work and "any material object in which the work is embodied.")

Because Count II arises under § 1125(a), the limitations of *Dastar* apply. Thus, the issue for dismissal is whether the allegations concerning the data files marketed and sold by U.S. Data are "tangible goods" or "communicative products." Section 1127 does not provide a definition of "tangible goods" under trademark law, though other sources give some direction. Defendants recognize that the United States Patent and Trademark Office's list of acceptable goods and services defines a database as a "good" only when it is recorded on tangible medium such as a CD, DVD, or tape.[2] The list of tangible media is not exhaustive and the Court must look elsewhere to determine whether the database at issue has been recorded on a tangible medium. Like the Supreme Court in *Dastar*, the Court finds the federal copyright statutory definitions helpful. Under copyright law "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

Here, based on the allegations in the Complaint, the data files at issue are fixed in a tangible medium such that they are "goods" under *Dastar*. Plaintiffs allege that

---

[2] The USPTO's *Trademark Acceptable Identification of Goods & Services* is available at http://tess2.uspto.gov/netahtml/manual.html; the notes and definitions are available at http://tess2.uspto.gov/netahtml/notes.html.

Defendants violated 15 U.S.C. § 1125(a)(1)(A) by misleading others to believe that Plaintiffs approved U.S. Data's goods and services.  (Filing No. 40 at ¶ 64).  Plaintiffs describe the data at issue here as "proprietary consumer databases" and allege that Defendants used the EXPERIAN and MOSAIC service marks in the sale of their data files without permission from Plaintiffs.  (*Id*. ¶ 2.)  The complaint further alleges that  U.S. Data salespersons told customers that U.S. Data could provide a "full, national file purchase for unlimited use."  (*Id*. ¶ 45.)  Two customers purchased at least a portion of the data file allegedly containing MOSAIC codes and EXPERIAN consumer data records, and the Complaint alleges that U.S. Data emailed a data file to at least one customer.  (*Id*. ¶ 47, 51.)  Plaintiffs do not allege that U.S. Data violated § 1125(a) by copying the ideas embodied in the database; rather, they alleges improper use of the actual files.  The Complaint does not specify the physical qualities of the list, how it was stored, or how it was sent, but the allegations show that it was sufficiently permanent "to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."  *See* 17 U.S.C. § 101.  Allegations that the file containing the EXPERIAN and MOSAIC marks could be purchased for unlimited use indicate that the file itself could be perceived or reproduced.  Furthermore, the allegations indicate that the file was stored and transmitted electronically.  While the Complaint does not specifically state whether the files were stored on a CD, DVD, tape, or some other storage media, the allegations sufficiently show that they could be retrieved and viewed for more than a transitory period of time.  Thus the lists, as described in the Complaint, are tangible goods under *Dastar* and the allegations are sufficient to state a claim under § 1125(a).

16

Defendants cite several cases to support their proposition that the data files at issue in this case fall outside the limitations imposed by the *Dastar* decision.  In *General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004), the Fifth Circuit upheld summary judgment against the plaintiff where the complaint alleged that the defendant copied the concepts, ideas, sequences, and structures embodied in the plaintiff's copyrighted work.  *Id.* at 149.  The court determined that these were disguised copyright claims barred by *Dastar*.  *Id.*  In *Xpel Tech. Corp. v. Am. Filter Film Distribs*., 2008 WL 3540345, at *1 (W.D.Tex. Aug. 11, 2008), the court dismissed a § 1125(a) claim stating that, like *General Universal Systems*, the plaintiff did not allege "that [d]efendants improperly acquired and sold its tangible products[,]" but alleged improper use of concepts, ideas, and designs of plaintiff's work.  *Id.* at *4.  The court reasoned that *Dastar* distinguished between concepts and ideas and the physical products resulting from them. *Id.*; *see also Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, 2007 WL 2193964, at **2-3 (S.D.N.Y. July 27, 2007) (dismissing plaintiff's claim because it was centered on the alleged infringement of ideas and concepts); *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 251-252 (1st Cir. 2004) (barring a claim under § 1125(a) based on content and ideas of a textbook).

In contrast, Plaintiffs allege that Defendants somehow acquired an unauthorized copy of consumer data files bearing the MOSAIC and EXPERIAN service marks. Plaintiffs further allege that Defendants marketed these data files to customers as authorized EXPERIAN data.  Plaintiffs in this case do not allege infringement on the concepts and ideas that make the MOSAIC and EXPERIAN marks unique.  These allegations differ from the

17

claims in the above cases.   In each of the cases cited by the Defendants, the court addressed the alleged infringement of the *ideas* behind a product.   The cases specifically construe *Dastar* as distinguishing between concepts/ideas and the products that result from them.   *See Xpel Tech. Corp.,* 2008 WL 3540345, at *1; *see also Thomas Publ'g Co.*, 2007 WL 2193964, at *2-*3.  Plaintiffs do not allege infringement of the ideas and concepts behind the Experian and Mosaic service marks; instead, they allege unauthorized use of the actual data files.  As noted above, the allegations of the Complaint create a reasonable inference that the lists are tangible goods.   Thus, accepting the allegations in the Complaint as true, the data files meet the requirements set forth by *Dastar* and Plaintiffs have standing to bring Count II.

## IV.   Failure to State a Claim For Infringement Under Nebraska Common Law

No parties argue that the elements of trademark infringement under Nebraska common law differ from the elements under §§ 1114 and 1125(a).  Because the Court finds that Plaintiffs have standing under §§ 1114 and 1125(a) and the Nebraska Fair Trade Practices Act, the Court finds that Plaintiffs have standing to assert a trademark infringement claim under Nebraska common law.

## V.   Failure to State a Claim Under the Nebraska Deceptive Trade Practices Act ("NDTPA")

A.   Inference of Future Injury

Count IV arises under the NDPTA codified at Neb. Rev. Stat. §§ 87-301 through 87-301.11.  Defendants first argue that the Complaint fails to allege in Count IV that Plaintiffs are likely to be damaged by a deceptive trade practice as required by § 87-303(a).  Section 87-303(a) permits injunctive relief for a person likely to be damaged by a deceptive trade act of another.   To state a claim under § 87-303(a), the complaint must allege facts

18

sufficient to support an inference of future harm.  *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 248 (Neb. Ct. App. 2007)(After unknowingly purchasing postage stamps at a price higher than face value, the plaintiff sued under the NDTPA to enjoin Walgreens from selling stamps above face value without notice of the higher price; the court determined that the plaintiff could not show likely future damage because the plaintiff now knew about the higher price.)

In contrast, the facts alleged in Plaintiffs' Complaint, accepted as true, sufficiently create an inference of future harm.  The Complaint alleges two instances in which the EXPERIAN and MOSAIC marks were used.  Plaintiffs allege that U.S. Data sales agent Rosche told a customer, among other things, that U.S. Data could meet the customer's request for a national EXPERIAN file for unlimited use; that U.S. Data was somehow authorized to distribute MOSAIC data; and that U.S. Data provided EXPERIAN data containing MOSAIC segments.  The Complaint also alleges that U.S. Data sales agent Kobza falsely told a customer that U.S. Data legitimately purchased all its data from Experian Marketing and its affiliates.  Kobza later sold EXPERIAN data with MOSAIC segmentation to the same customer.  The allegations also suggest that U.S. Data possesses the entire unauthorized and inferior EXPERIAN data file.  These facts are sufficient to create an inference of future harm.  Statements such as those allegedly made by Rosche and Kobza may lead customers to believe that, if they purchase data from U.S. Data in the future, they will obtain EXPERIAN authorized data.  Unlike the plaintiff in *Reinbrecht*, there is no indication that consumers will know that the data files they may receive in the future are not authorized EXPERIAN data.  An injunction under § 87-302(a) would eliminate public

confusion as to the source of the data files.  The Court therefore concludes that the complaint alleges sufficient facts to infer future harm as required by the NDTPA.[3]

B.    Failure to Cite a Specific Subsection of Neb. Rev. Stat. § 87-302(a)

Defendants also contend that Count IV should be dismissed because it fails to cite the specific subsection of Neb. Rev. Stat § 87-302(a) which gives rise to Plaintiffs' claim. As both parties recognize, Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Without unnecessarily reciting the standard of review for dismissal, the failure to cite the specific subsection of § 87-302(a) does not defeat the fair notice requirements of Rule 8(a)(2). Further, for the purpose of notice to Defendants, Plaintiffs' brief cites the specific subsections upon which its claim is based.  (Filing No. 47, at 14 n.8).  Thus, Plaintiffs' failure to cite the specific subsections of § 87-302(a) does not merit dismissal of Count IV.

**VI.    State Law Claims Against Herdzina**

Defendants argue that Herdzina cannot be liable personally under either of Plaintiffs' state law claims because the Complaint fails to allege personal liability.  Generally, the officers and directors of a corporation are not liable to creditors or third persons for corporate debts or acts. *Huffman v. Poore*, 569 N.W.2d 549, 556 ( Neb. Ct. App. 1997). In Nebraska, where a corporation commits fraud, however, officers may be liable in their individual capacities. *Id.*  Further, an officer may be personally liable for a company's torts

---

[3]  The Court is not aware of, nor do Defendants cite, any authority for the assertion that Plaintiffs must show Defendants used the service marks in question after some kind of notice or after the Complaint was filed to sufficiently allege a future injury. Accordingly, the Court is not persuaded that a violation of such notice is necessary to infer injury.

if the officer takes part in their commission. *Id.* at 558 (quoting 3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1137 at 300-01 (1994)).

The Complaint alleges that Herdzina is the president of U.S. Data and that he participates directly in the operation of the company and the management of its employees. The Complaint also alleges that Herdzina was aware that U.S. Data wrongfully obtained and disseminated EXPERIAN data, contrary to the Plaintiffs' strict licensing terms, and that he is the individual who determines what data U.S. Data obtains and disseminates for profit. Liberally construing the allegations in the Complaint, they are sufficient to withstand the Defendants' Motion to Dismiss.

### CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part the Defendants' Motion to Dismiss.

IT IS ORDERED that the Motion to Dismiss (Filing No. 43) filed by Defendants U.S. Data Corporation and Jeff Herdzina, is granted in part and denied in part as follows:

1.  Any claim asserted by Plaintiff Experian Marketing Solutions, Inc., as to the EXPERIAN service mark in Count I is dismissed with prejudice;

2.  Any claim asserted by Plaintiff Experian Information Solutions, Inc., as to the MOSAIC service mark in Count I is dismissed with prejudice;

3.  Plaintiff Experian Marketing Solutions, Inc., is granted leave to file a Second Amended Complaint on or before September 21, 2009, to clarify its rights to the MOSAIC service mark and to attach a copy of its license agreement for use of the MOSAIC service mark, and for no other purpose,

21

4.     In the absence of the filing of a Second Amended Complaint, any claim by Plaintiff Experian Marketing Solutions, Inc., as to the MOSAIC service mark in Count I will be dismissed;

5.     The Defendants will respond to any Second Amended Complaint within fourteen (14) days after service of the Second Amended Complaint, or, if no Second Amended Complaint is filed, the Defendants will respond to the First Amended Complaint on or before October 5, 2009; and

6.     The Motion to Dismiss is otherwise denied.


DATED this 9th day of September, 2009.


BY THE COURT:


s/Laurie Smith Camp
United States District Judge